United States v. Carrillo-Lopez. Council, may it please the court. Council, my name is Rudy Valenzuela. I represent Mr. Carrillo-Lopez. This is a knowledge case. Carrillo-Lopez crossed the international border in a vehicle that contained drugs. When he was questioned about the drugs, he indicated to the officer he had no knowledge that drugs were contained in his vehicle. The question is, can the government call an expert and then elicit opinion of the defendant's state of mind? In this particular case, the ultimate issue is, did the defendant have knowledge that drugs were contained in his vehicle? The government called an expert witness, and based on his testimony, it was quite clear from those facts that the government did elicit opinions from this particular expert that went directly to the heart of the defendant's state of mind. This is unlike the Murillo case. In Murillo, we have a situation where the expert testifies that individuals do not typically allow individuals to take vehicles that contain drugs. Counsel, if we assume that it was error to admit this expert's grandiose testimony about drug schemes and drug organizations, how strong is the evidence against your client without that, if we were to say that the government shouldn't have done that? What we have here, Your Honor, is we don't have any statements from Mr. Carrillo Lopez indicating he had any knowledge whatsoever. The only evidence that we do have apart from that is that he was driving a vehicle which he previously owned and sold to another individual who asked him to cross it across the border for him because he did not have, one, the proper documentation to show the vehicle was his, transferred title had not taken place, and two, we also have an officer indicating that Mr. Carrillo Lopez was nervous, which is normal for any individuals that cross the border and they're asking for help. Did your client make some kind of a statement when they found the cocaine behind the gas tank? Your Honor, I believe the only thing that my client did, according to the agent, was that he put his head down as if he was disappointed. That was what the officer was assuming that he did. That's the reason why he did it. And he replied, okay. But in response to that, Mr. Carrillo Lopez testified that what he did was put his head down because he realized there were drugs in that vehicle, and he was asked to follow the officer into another room, and, in fact, that's what he did. Apart from that, it's all innuendo. Obviously, all of these officers can testify as to what they believe is happening, but Mr. Carrillo Lopez made no statements whatsoever to indicate that he had knowledge that the drugs were in the vehicle. On the contrary, he did indicate that he was going to Kmart, but prior to going to Kmart, he was going directly across the border no more than 300 meters to an auto zone. At this particular auto zone, he was requested to go and meet with an individual who needed his vehicle pulled back into Mexico. That's what he was told. So Mr. Carrillo Lopez indicated that to the officer. He also told him he was going to go to Kmart at some point to exchange a T-shirt, a T-shirt that he had in his vehicle. I don't want to – sorry for stepping on your answer. Are you done with that answer? Yes, I am. Okay. Can you just clarify for me again what the evidence was about the car ownership? I was confused about that. I think he testified that he transferred the car to another person, but he kept the car? I don't get it. Mr. Carrillo Lopez had purchased vehicles in Phoenix in the past, and part of what he used to do to make extra money was go to Phoenix, Arizona, which is about 120 miles from the border, and purchase vehicles at auctions or any other locations. When he would return to Mexico, he would sell those cars. He had a truck that an individual wanted to buy. This particular truck was his own vehicle. It was registered in his name. This vehicle was sold to this particular individual. What does he mean that it was sold to him? Well, he didn't transfer title, but he had paid him the majority of the money for this particular truck. Oh, I see. But he still had the truck. He got the truck the day before. Because this gentleman told him, I need to go pick up a vehicle at the AutoZone. It broke down. I need you to go pick it up for me. I don't have title to this vehicle. It's still in your name. So he went across the border with that particular truck. He did not have the vehicle in his possession. Wasn't there some testimony that he had testified that he had sold it some weeks to this fellow some weeks earlier, but yet he maintained possession of it? No. I believe there was a witness who indicated that he believed he had seen Mr. Carrillo Lopez drive the vehicle prior to that day. However, it was Mr. Carrillo Lopez's testimony that he sold the vehicle weeks before, and he got a call that evening to take this particular truck and go across 300 meters across the border and haul back another vehicle that was located at the AutoZone. That vehicle was no longer working. So who had possession of the truck before he went back? Another gentleman, which the gentleman, Mr. Carrillo Lopez, indicated to the court that he had sold the vehicle. And Carrillo Lopez testified that the other fellow had possession of it? That's correct. That was his testimony. I didn't mean to interrupt your argument on whether the government's witness testimony should have been admitted or not. Well, I would like to touch upon that. I think this is very different from the Murillo case and all the other cases, particularly because the officer or the agent testified that drug traffickers do not use drivers, that they do not know about narcotics contained in a vehicle. He made it very clear that they never use them. Not only did he say don't use them, he also said they never use them. He also said that that never happens. He also said that based on his experience that, you know, it hasn't happened. I would think that would be appropriate if he says based on my experience on the cases that I've looked at. I would think that that's appropriate. But when you go a little step further and you say it's never happened, it doesn't happen, it's not ever going to happen, then you're talking about a case where he's directly making a comment about the defendant's state of mind, suggesting that the defendant had to know that drugs were in his vehicle. When questioned about his resume, this particular agent indicated and testified that when he put the words in his resume to suggest that traffickers prefer to control their vehicles and know exactly who's driving them and letting them move, he then changed it when I asked him, and I asked him what that meant. He said that he was sorry he made a mistake, but actually what he was trying to say is that they do not use, that traffickers do not use unwitting participants. So, again, he testified that they do not use them, rather than they're reluctant to or they prefer not to use it. He also used that word, in fact, reluctant to use unwitting drivers for fear of losing control. When I asked him about that, he said that the word reluctant, his interpretation was that reluctant is do not use, again suggesting that individuals are not used by traffickers to transport drugs without their knowledge. That is so far from the truth and from reality. The truth is and the reality is that drug traffickers are winning the war on drugs because they are able to convince individuals and other parties to do things that they're not aware of. It happens every day on the border. We have cases even now where drug traffickers are telling individuals that they need to transport a vehicle across the line solely for the purpose of taking that vehicle so that it can be used to transport illegal aliens. Now, these individuals that transport that vehicle don't see anything, believe that, in fact, they may be doing something wrong, but they believe that they are just taking the vehicle across the line so it can be used later on to transport illegal aliens. And what we find is that there are drugs in the vehicle. The realities are that if you have an expert testimony and that expert is testifying that it is not likely and that individuals are reluctant to do it, that's a far cry from a case where you're saying it never happens, a very far cry. And that's the problem. We have about 30 seconds if you want to save. No, I want to save some time. Thank you. Good morning. May it please the Court. I'm Chris Cabanillas from the District of Arizona. The district court in this case did not abuse its discretion in admitting this expert testimony because what was admitted complied with U.S. v. Murillo. And this is one of those cases where the district court was right on top of the case law. He was looking at Pineda-Torres. He was quoting from it, and he also explained the differences between what the government was seeking to admit in this case and that in Pineda-Torres and the Vallejo decision and what the government was seeking to admit, as the district court noted, was only what this court had permitted in Murillo. I respectfully disagree with counsel's characterization of the expert testimony in this case. The expert testified several times that this was in his opinion. Drug trackers do not entrust large amounts of drugs to unwitting couriers. Additionally, the defendant in his opening brief suggests this was not a large amount of cocaine, and the answer is actually it was. The expert testified it was worth $8,000 to $9,000 in Tucson, which would triple by the time you went to the Midwest. If you times that by the 38 pounds of cocaine, that's well over a million dollars' worth of cocaine. And that's what in Murillo this court noted the drugs were worth over a million dollars. The expert in this case testified as to the value of the cocaine, that in his experience drug traffickers do not entrust large amounts of drugs to unwitting couriers, and then he explained why. And that was the case. The whole nature of the business, it's like the tomato business. I'm sorry? I said it's like the tomato business, as he explained. And he described the entire business operation, the people they have on standby to perform repairs, people who perform other functions. He described it, he said it's just like in any other organization or business, and described the manner in which the drug structure or operation functions. Actually, I disagree. I think he explained the reasons why a trafficker would not want to relinquish control of the drugs to someone who didn't know what was going on, and all of the testimony related to control. And before that was admitted, the district court had a pretrial hearing where it heard from Agent Ruttencutter and listened to the government's proffer, and the government was proffering that what was going to be admitted was that the agent was going to testify about why it is that a drug trafficker would not want to release control of the drugs to someone who didn't know what they were doing. So all of the testimony, if you look at those pages. Yeah, I'm looking at the pages. Oh, yes. I see where they talk about having mechanics on standby who are there to construct compartments. And then they have the buyers and the sellers, like any other business. And they have a respected business among these organizations. And that's what they go into. Which page are you looking at, Your Honor? It's mottos. The excerpts of records from 62 to 65. And then let's see where it is. And 68 to 71. 62 to 65. And again, there I'm seeing what would happen if the person who put the drugs in the vehicle lost control of the car and did not have power over that particular vehicle. It all came down to the notion of what happens. And the mechanic that you're talking about, I believe that that was brought out in the context of what would happen if you let this vehicle out of your sight in terms of getting the drugs later. If this person didn't know what was going on, that you would have to surveil this vehicle 24 hours a day to figure out when you're going to actually get the drugs out. And that's what that testimony was narrowly focused on. And I think that is permissible under Murillo because this Court noted that the agent was able to testify whether in his experience drug traffickers entrusted, I'm quoting on page 1177, whether drug traffickers entrusted thousands of dollars of drugs to couriers who didn't know they were transporting, and number two, why in his experience drug traffickers didn't do so. That whole control explanation was the why. Why it would be that drug traffickers would not entrust large amounts of drugs to someone who didn't know what they were doing. Because then you would have to have somebody who would be surveilling the car 24 hours a day and trying to assess how it is they would get it and what would be entailed in removing the drugs from a gas tank where it had been secreted. And that's where the mechanic came in. You'd have to have somebody who would be able to do it really fast without the driver knowing what was going on. So all of that testimony relates to why it is that that particular individual would need to know what was going on. In Murillo, was the individual charged with control? I'm sorry, Your Honor? In Murillo, was the individual charged with conspiracy? In Murillo, no. I don't believe so. Am I incorrect about that? He was charged with possession with intent. And did he have a fingerprint defense in Murillo? In Murillo, I... I should say a lack of fingerprint defense. Forgive me, Your Honor. I just need to double-check because I know that... I don't remember. Let me look. No, it was Vallejo that had that. Murillo was... Murillo is very much on point to this one, to this case, because of the nature of the type of crime and the type of crime we had here. And Pineda-Torres actually distinguishes between them better than I can, I think, Your Honor. And this is the language the district court quoted at SCR 8. Our decision in Murillo does not require a different result. Murillo did not involve expert testimony about the structure of drug trafficking organizations. Murillo involved unknowing drug courier modus operandi testimony that drug traffickers don't routinely entrust large quantities of drugs to people who are unaware that they're transporting them. And the unknowing drug courier testimony is admissible in a drug possession case involving over a million dollars' worth of drugs to attack the defendant's defense that he was simply an unknowing courier. That's exactly what we had in this case. And the government was very specific with the court about what it was going to elicit. The government did elicit that testimony, and that was specifically permitted in Murillo. And the district court was careful in noting that, and quoting from Pineda-Torres. And the government quoted that language that I just previously quoted about what the agent is entitled to testify to. Did Murillo, did the testimony go into things like, you know, we have a different set of people who have to make quick changes to the gas tanks and the different values that are added and different costs that occur at various stages? The value, yes. And the part about the mechanic, that was done in the context of trying to explain what someone would need to do in order to keep track of a car, the drug trafficker would order to keep track of a car when the driver doesn't know what's going on. See, I think it's important to see this case in the context of the evidence that was presented in context of the defense and the facts that we had drugs in a gas tank. So that was what the mechanic was about, was trying to explain that in order to get the drugs out of a car when the defendant didn't know what was going on would require somebody to be there to, a mechanic, to get it out, to get the drugs out before the guy came back who allegedly didn't know what he was doing. The answer to one of Judge Fletcher's questions was that Murillo was. I'm sorry, Your Honor. The answer to one of, I think it's Judge Fletcher's questions, or maybe it was Judge Estany's, is that Murillo was a fingerprint case. I don't think so. It says, in contrast, Murillo designated a fingerprint expert before trial and argued in his defense at trial that no fingerprints were found on the drug package. Yeah, then that looks like that is the case. The only thing is, though, Your Honor, I don't believe this Court narrowed the testimony of an expert like this to one when a fingerprint defense is raised. It also says it in Murillo that the expert did not imply that Murillo participated in a large-scale operation. Let me ask this. If we were to disagree with you in respect to the admission of this evidence, would there have been a conviction or a reasonable possibility that this affected the ---- Your Honor, any error in admitting this testimony was harmless. I got into that in great detail in the brief. I'd like to list a few reasons why it is that this defendant's guilt was proven beyond a reasonable doubt, even if that hadn't been admitted. We have the defendant crossing the border. He has the 38 pounds of cocaine in his truck. He ---- his vehicle, excuse me. He admits that he owns the car. He shows vehicle registration, which says, has his name on the registration. He also ---- there's a modified gas tank in this case, whereas if you open up the tank and you fill it ---- if you were to fill it with gas, you would know right away that it was not a legal gas tank. There were fresh paints on the nuts and bolts of the gas tank. The defendant's really nervous and shaking when he's talking to the officer. And there was testimony that he was a frequent border crosser, so there wouldn't have been a reason for him not to be used to the routine at the border. Additionally, that part that one of you asked about, the nervousness on the part of the defendant or what happened, did he make a statement? When the agent's reaching behind the gas tank and before any drugs are visible, you know, after he touches what's behind, you know, the defendant's looking at him and his eyes are really large, it was described, that look of concern. And then when the agent finds the drugs, before again they're visible, he walks over to the defendant and the defendant says, okay, okay. And he deflates on himself in a way that suggests that he knew what was there and it was sort of like a you got me look. And additionally, the defendant in this case took the stand. And as this Court has noted on several occasions, when a defendant takes a stand and he's incredible, then that is additional evidence of guilt. Here are the reasons why the defendant's testimony was not credible. He stated, first of all, that he tried to explain why it is that he would have admitted that he owned the vehicle when he actually, allegedly now when he testifies, he didn't know the drugs were there and he said he sold the car. Now, that, again, is a conflict between what occurred at the district, I mean at the port of entry. Additionally, he says that he sold the vehicle to a gentleman and he doesn't know where that gentleman lives. Additionally, he said he lied to the inspector at the port of entry because he thought he was going to incur some kind of charges for towing the car. But on cross, he admitted that that wouldn't apply to this car he's driving across the border. When asked, so there would be no reason for you to lie at the port of entry, he says, you're right. So then after that, we have the testimony that he supposedly sells this car, yet the frequency with which the car crosses the border doesn't change in light of the text entry. So the jury could reasonably conclude that he hadn't sold the car because the frequency with which it crossed the border hadn't really changed. He also says that he knew Inspector Mellon, that he'd seen him many times when he crossed the port. Inspector Mellon testified that's not true. The defendant stated that he saw him wearing a Halloween mask on one occasion and the agent said, I wouldn't be wearing a mask on duty. That's not accurate. So the bottom line is there were all sorts of reasons why the jury could conclude this defendant was lying. And his testimony as well as the case very similar to Vallejo, who also told a series of lies about the car and why he was crossing the border. Actually, Your Honor, I believe in Vallejo, though, there was much more evidence in this case than there was in Vallejo. Additionally, Pena de Torres, Your Honor, notes that there were these facts that would You say, aside from the presence of the marijuana in the car and the minimally probative testimony regarding his nervousness. And this was a Border Patrol agent whose notes contained significant omissions and a name other than the defendant's. I mean, we don't have that here. And the improper expert testimony imputing knowledge was the only and it's imputing knowledge of his implied connection to an international drug trafficking organization. Again, we don't have drug trafficking organization testimony in this case. We have unwitting career testimony, which is precisely what this Court authorized in Murillo, and for all of the reasons I think I've explained in the briefs, this Court should not reverse the conviction. The evidence was admissible under this Court's case law and there was more than sufficient evidence to convict this defendant, even if that evidence had been admitted in error. Thank you, counsel. Thank you. We'll give you a minute or two, if you'd like. Thank you, Your Honor. I won't need that much. The mission of this evidence was not harmless. It's clear that the agent testified at trial that it was his opinion that every person who is behind the wheel of a car with illegal substance in that car is told there's something in the vehicle. That's what he said. Even before, it's clearly a direct opinion of the defendant's guilt. So even before Mr. Carrillo-Lopez gets a chance to testify, the jury is already thinking about that. We know that because the jurors were allowed to ask questions in this case. And before Mr. Carrillo-Lopez testifies, they are already asking, a juror is already asking, does he see his friend on a regular basis and does he know what is going on with the truck? Did he know about the paint job in the fuel tank? They're already asking a number of questions. Tell me, do you think that the testimony that came in was testimony that describes the structure of a large drug operation? I also believe that also happened in this particular case. What kind of statements do you think fall into that category? Well, first he starts talking about the money issues, which have nothing to do with transportation. Then the government starts asking this particular expert witness about transportation issues, about control issues. So now we get a whole bunch of other questions about organizations. In fact, there's even mentions of organizations. When that happens, now you have even more information that is very prejudicial, suggesting that Mr. Carrillo-Lopez is involved in an organization. That wasn't necessary. It didn't have to happen. I believe the only thing that had to happen was this individual would testify that he had an expert opinion based on his experience in the cases that he's worked. But he did much more than that. He made it very clear that he believed that no one drives a vehicle, no one, without knowing that there's drugs in the vehicle. Thank you. Thank you, counsel. The case discharge will be submitted. Next case for argument is United States v. Grubbs. Thank you.
judges: B. Fletcher, Reinhardt, Restani